UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **COKER B. CLEVELAND,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 1:25-cv-00515-RDP |
| **JESSICA KIRK DRENNAN, et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendants Jessica Kirk Drennan, Amanda Duncan, and Kirk.Drennan, PC's ("the Drennan Defendants") Motion to Dismiss (Doc. # 14) and Defendants George C. Day Jr. ("Day") and Jami Shellnut's ("Shellnut") Motion to Dismiss (Doc. # 8).[1] The Drennan Defendants argue that: (1) Plaintiff's complaint amounts to a shotgun pleading and allowing him to amend would be futile; (2) Plaintiff's claims are barred by the *Rooker-Feldman*[2] abstention doctrine and the domestic relations exception to federal jurisdiction; and (3) Plaintiff's complaint does not establish federal jurisdiction over them because they were never acting under color of state law. (Doc. # 14 at 3-17). Defendants Day and Shellnut argue that the claims against them cannot proceed because they are immune from suit under the doctrines of sovereign immunity, judicial immunity, and/or quasi-judicial immunity. (Doc. # 8 at 2-7). The Motions have

---

[1] Defendant Dr. Alan Blotcky was dismissed from this case based on Plaintiff's failure to perfect service. (Doc. # 22). Defendant The Shellnut Law Firm, PC was dismissed based on Plaintiff's failure to oppose its Motion to Dismiss. (Doc. # 27).

[2] *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

been fully briefed (Docs. # 8, 14, 18, 21, 23, 26). For the reasons set forth below, Defendants' Motions are due to be granted.

I.    Background

On April 7, 2025, Plaintiff – a lawyer litigating this case *pro se* – filed a complaint against a group of lawyers, law firms, judicial officers, and an expert witness all associated with a state court domestic relations matter involving Plaintiff's divorce and the custody of Plaintiff's minor child. (Doc. # 1). Defendants Jessica Kirk Drennan, Amanda Duncan, and Kirk.Drennan, PC all represent Plaintiff's ex-wife in the domestic relations matter. Defendant Jami L. Shellnut served as Guardian Ad Litem in the matter. Plaintiff also sued Defendant Shellnut's law firm, The Shellnut Firm. Defendant George C. Day, Jr. was the state court judge presiding over the matter, and Alan D. Blotcky served as an expert witness regarding Plaintiff's mental state in the matter. Although the "facts "alleged by Plaintiff are quite extensive, some of them have little relevance to the claims he brings against Defendants. Nevertheless, the factual allegations all share a common thread: the domestic relations dispute between Plaintiff and his ex-wife that was previously decided in state court.[3] Plaintiff asserts claims under 42 U.S.C. § 1983, 18 U.S.C. § 242 (Deprivation of rights under color of law),[4] and Alabama state law. Each of the counts "incorporates and adopts by reference each and every preceding Paragraph alleged and/or averred in this Complaint as if state [*sic.*] herein in its entirety." (Doc. # 1 at ¶¶ 225, 236, 244, 251, 256, 260, 267, 272, 279, 286, 289, 294).

---

[3] Plaintiff repeatedly refers to the "final order" entered by Defendant Day in the family court matter. (Doc. # 1 at ¶¶ 210, 213, 217, 218).

[4] This is a criminal statute that carries a fine or "imprison[ment]" for "not more than one year," or both. 18 U.S.C. § 242.

2

In his prayer for relief, Plaintiff represents that he "does not seek reversal of [s]tate [c]ourt [o]rders." (*Id.* at ¶ 304). Instead, Plaintiff purportedly "seeks access to a [c]ompetent and [u]nbiased tribunal" to grant him an opportunity to be heard on issues that were handled "with [r]eckless and [c]allous disregard" for the "[f]oundational [t]enants of Alabama [f]amily [l]aw" and a "complete lack of concern" for upholding Alabama law at the state court level. (*Id.* at ¶ 305).

As stated, Plaintiff's claims center around a domestic relations dispute between him and his ex-wife and involving the custody of their minor child. The narrative alleged in Plaintiff's complaint relates to events that occurred after that domestic dispute was well underway. Plaintiff alleges a multitude of wrongdoings committed by his ex-wife and her current partner, neither of whom are parties in this action. For instance, Plaintiff claims that he received harassing and threatening phone calls from Mr. Armstrong, Plaintiff's ex-wife's current husband. (*Id.* at ¶¶ 28-33). Similarly, Plaintiff refers to multiple incidents at a Waffle House in Lincoln, Alabama, where Plaintiff and his ex-wife exchanged custody of their minor daughter.[5] (*Id.* at ¶¶ 52-55, 61-75). Plaintiff additionally raises constitutional issues related to his arrest for driving under the influence ("DUI") by the City of Heflin Police Department. (*Id.* at ¶ 167). Neither the City of Heflin nor any other entity related to that incident are party to this action.

The factual allegations that Plaintiff has pressed against Defendants all relate to the underlying domestic relations state court action. The court has attempted to catalog Plaintiff's relevant *factual* allegations as best it can: (1) Defendants Drennan and Duncan filed multiple documents containing false statements that were prejudicial to him in the state court case (*id.* at ¶¶ 48, 50, 125); (2) Defendant Drennan's attorneys' fees affidavit contained false statements and

---

[5] During the first "Waffle House incident," Plaintiff alleges that he was served with a summons for the state court proceedings by a process server. During the second "Waffle House incident," Plaintiff alleges that his ex-wife sped toward him in her car at an elevated speed. He alleges that both incidents occurred in the presence of the minor child.

3

mischaracterizations (*id.* at ¶¶ 59-60); (3) Defendants Drennan and Duncan sent a letter to Waffle House that prevented him from gaining access to the facility's security camera footage (*id.* at ¶ 85); (4) Defendant Drennan initiated a telephone conversation with Plaintiff's original counsel, Donald C. Murphy (*id.* at ¶¶ 104, 110); (5) Defendants Drennan and Duncan engaged in *ex parte* judicial communications with Judge Walker and Defendant Day (*id.* at ¶¶ 116, 118-20); (6) Defendant Day issued an order on February 20, 2024 suspending Plaintiff's visitation rights, granting emergency relief, setting hearings, and consolidating cases for trial (*id.* at ¶¶ 134, 146); (7) Defendant Day based his order at least in part on Plaintiff's DUI arrest (*id.* at ¶ 151); (8) on August 12, 2024, after conducting a walkthrough of Plaintiff's home and his mother's home, the court-appointed Guardian Ad Litem ("GAL") requested that the trial court suspend Plaintiff's visitation with his minor daughter (*id.* at ¶¶ 174, 176); (9) Defendant Day denied Plaintiff's motion to reconsider the GAL report and ordered Plaintiff not to file another motion to reconsider (*id.* at ¶ 178); (10) Plaintiff alleges that he filed a Rule 60(b) Motion regarding Defendant Day's February 14, 2024 order and a motion he alleges was for a declaratory judgment, both of which Defendant Day denied on October 19, 2024 (*id.* at ¶¶ 181, 184, 187-88); (11) Defendant Day appointed Defendant Shellnut to serve as GAL in the case and relied on her report in his findings (*id.* at ¶¶ 190-92); (12) Defendant Day entered an order scheduling the final hearing for child custody actions with one day's notice for which Plaintiff alleges he did not receive service (*id.* at ¶¶ 196, 198); (13) Defendant Shellnut, in her capacity as GAL, filed documents in the state court case that were unfavorable to Plaintiff (*id.* at ¶¶ 194, 200-01, 205-06); (14) Defendant Day entered an order stating that Plaintiff did not have legal authority to challenge Defendant Shellnut's report (*id.* at ¶¶ 203-04); (15) Defendant Day entered an order in the state court case in which he declined to rule on Plaintiff's Motion for Sanctions against Defendant Drennan (*id.* at ¶¶ 209-10); (16) after several

4

motions were filed by Plaintiff, Defendant Day set a hearing on post-trial damages but limited the argument to narrow issues, which prevented Plaintiff from making certain arguments (*id.* at ¶¶ 212-15); and (17) Defendant Day gave Defendant Drennan the authority to draft the state court's "final order," which further limited Plaintiff's parental rights and denied several of his motions in the case. (*Id.* at ¶¶ 217-20).

Plaintiff does not allege any facts that relate to events that occurred outside of (1) the context of the litigation and (2) the adjudication of the state court domestic relations matter. Furthermore, the complaint is replete with legal conclusions, recitations of statutes and Rules of Professional Conduct, and matters incorporated by reference. In their Motion to Dismiss, the Drennan Defendants noted that Plaintiff filed a Notice of Appeal in the state court matter. (Doc. # 14 at 8, n. 3).

## II.    Standard of Review

"Federal courts are courts of limited jurisdiction and are required to inquire into their [subject matter] jurisdiction at the earliest possible point in the proceeding." *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1279-80 (11th Cir. 2001) (citations omitted). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

Federal Rule of Civil Procedure Rule 8(a) states that a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which

may include relief in the alternative or different types of relief. Federal Rule of Civil Procedure Rule 10(b) states in relevant part that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

## III.     Analysis

As explained below, after careful review, the court concludes that Plaintiff's Complaint is a shotgun pleading. Further, permitting re-pleading would be futile because, among other things, consistent with this court's holding in *Deaton v. Stephens*, "principles of comity, equity, and federalism counsel toward this court abstaining in this controversy." No. 2:23-CV-00713-RDP, 2023 WL 6131452, at *2 (N.D. Ala. Sept. 19, 2023). In addition, Day enjoys judicial immunity and Shellnut enjoys quasi-judicial immunity, barring Plaintiff's claims against them. Finally, as a matter of law, Plaintiff cannot sustain a cause of action against Defendants under either of the federal statutes he references.

### A.     Plaintiff's Complaint is a shotgun pleading.

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). The Eleventh Circuit has repeatedly and vehemently condemned shotgun pleadings. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n. 3 (11th Cir. 2020). There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

"The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) ("[W]e 'have little tolerance for shotgun pleadings.'").

Plaintiff's Complaint is a shotgun pleading of the first and fourth type as it repeatedly incorporates by reference of all preceding paragraphs in each count. In each of his twelve counts – and at the beginning of each new section of the Complaint – Plaintiff states: "Plaintiff incorporates and adopts by reference each and every preceding Paragraph alleged and/or averred in this Complaint as if state [*sic*] herein in its entirety." (*See* Doc. # 1, generally). Although Plaintiff does specify which claims are asserted against which Defendants in the caption of each count, the incorporation by reference paragraph contained in each count makes it unclear which counts Plaintiff is bringing against which Defendants. This type of pleading leaves the court and the Defendants without proper notice of the specific facts that support each of Plaintiff's claims and against whom each claim is brought. *See Deaton*, 2023 WL 6131452, at *2.

Plaintiff's Complaint is also a shotgun pleading of the second type. As previously stated, Plaintiff alleges multiple instances of wrongdoing against his ex-wife, her current husband, and even a municipal police department, none of whom are parties in this action. These actions bear little relevance on the factual allegations Plaintiff makes against the Defendants in this case. Furthermore, Plaintiff's Complaint is replete with conclusory allegations as to Defendants' conduct, using language such as "unlawful," "unethical," and "fraudulent" throughout. (*See* Doc. # 1, generally). Plaintiff also alleges several instances of wrongdoing without including facts to support his allegations. For example, Plaintiff claims that: (i) Defendant Drennan tried to break attorney-client privilege between Plaintiff and his first attorney in the case based solely on the

existence of a phone call between the two (*id.* at ¶ 104); (ii) Defendant Day gave Defendant Drennan complete authority to write orders on his behalf without any factual support (*id.* at ¶¶ 217-20); and (iii) that Defendants all conspired against him (without providing any factual basis to show that was the case) (*id.* at ¶ 237).

### B. Allowing Plaintiff to re-plead would be futile.

Federal Rule of Civil Procedure 15 permits a party may amend a pleading once as a matter of course within twenty-one days of service of either that party's pleading or a Rule 12(b) motion. Fed. R. Civ. P. 15(a). Otherwise, a party may only file an amended pleading with the written consent of the opposing party or leave of court. *Id.* Numerous motions to dismiss have been pending for over twenty-one days – one of which raised the assertion that Plaintiff's Complaint is a shotgun pleading. (Doc. # 14 at 3-8). Plaintiff has not sought to amend his Complaint. But, the question is whether the court should direct him to do so.

When a court is faced with a shotgun pleading, it will generally provide the Plaintiff with at least one chance to re-plead the Complaint before dismissing the case with prejudice. *Brown v. Air Line Pilots Ass'n*, 813 F. App'x 353, 355 (11th Cir. 2020). However, a Plaintiff need not be allowed to re-plead when an amendment would be futile. *Id.* An amendment is futile "if 'the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id.* (citing *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248 (11th Cir. 2017)).

For the reasons explained below, Plaintiff's Complaint is legally deficient. Further, Plaintiff's desired remedies are outside the scope of this court's jurisdiction, and allowing him to re-plead would only prolong the inevitable dismissal of his case.

### C. Plaintiff's claims are barred by the *Rooker-Feldman* doctrine to the extent that state court proceedings are final and the *Younger* abstention doctrine to the extent that state court proceedings are ongoing.

This court's decision in *Deaton* is on point. 2023 WL 6131452. In that case, Plaintiffs were involved in an underlying child custody dispute in state court. *Id.* at *1. Unsatisfied with the results of their state litigation, the *Deaton* plaintiffs brought suit in federal court. *Id.* This court held that their claims were barred by the *Rooker-Feldman*, *Younger*, and *Colorado River* abstention doctrines, as well as the domestic relations exception to federal jurisdiction. *Id.* at **3-9. *See Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

### I. *Rooker-Feldman*

Federal district courts are not the appropriate place for aggrieved state court litigants to re-hash their dissatisfaction with the outcome of state court actions. The *Rooker-Feldman* doctrine sharply limits a federal district court's jurisdiction over certain issues that go to final judgment on their merits in state court. As this court set forth in the *Deaton* decision:

> The *Rooker-Feldman* doctrine limits a district court's jurisdiction over certain matters related to prior state court litigation, and applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine's reach "extends not only to federal claims actually raised in state court, but also to federal claims 'inextricably intertwined' with the state court's judgment, meaning those that can 'succeed[] only to the extent that the state court wrongly decided the issues' before it." *Lawton v. Rosen*, 559 F. App'x 973, 974 (11th Cir. 2014) (per curiam) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

2023 WL 6131452, at *3.

The Eleventh Circuit has repeatedly held that that *Rooker-Feldman* doctrine applies to state court child custody disputes. *Fox v. Fla. Dep't of Child. & Fams.*, 828 F. App'x 639, 640 (11th

9

Cir. 2020) ("We've applied *Rooker-Feldman* principles to child custody proceedings on multiple occasions and have concluded that, under *Rooker-Feldman*, we may not interfere with final judgments rendered by state courts.") (collecting cases); *Thomas v. Disanto*, 762 F. App'x 770, 772-73 (11th Cir. 2019) (per curiam) (affirming the district court's finding that the *Rooker-Feldman* doctrine was a jurisdictional bar to the review of a state court child custody matter to the extent the proceeding had concluded); *see also Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001) (describing a federal action seeking "an injunction preventing enforcement of [a] state court judgment and returning custody to the aggrieved parent" as an "easy case for application of the *Rooker-Feldman* doctrine").

Moreover, "*Rooker-Feldman* [] does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) (citing *May v. Morgan County*, 878 F.3d 1001, 1004 (11th Cir. 2017) (A "state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim.")). In *Behr*, the Eleventh Circuit reiterated that the *Rooker-Feldman* doctrine bars "only 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Behr*, 8 F.4th at 1212 (quoting *Exxon Mobil*, 544 U.S. at 284 and citing *Nicholson*, 558 F.3d at 1274).

Almost identically to the *Deaton* plaintiffs, the Plaintiff in this case states that he "does not seek reversal of [s]tate [c]ourt [o]rders" but rather "a [c]ompetent and [u]nbiased tribunal" to hear his arguments. (Doc. # 1 at ¶¶ 304-05). Plaintiff additionally seeks a court order stating that Defendants' alleged acts violated "the First, Fourth, Ninth, and Fourteenth Amendments to the

10

United States Constitution." (*Id.* at 90). In his Response to the Drennan Defendants' Motion to Dismiss, Plaintiff appears to change his tune, stating that he only seeks "money damages for constitutional violations." (Doc. # 23 at 13).

The court is not persuaded by this argument for multiple reasons. First, Plaintiff's Complaint, which is the operative pleading on a Motion to Dismiss, states that he seeks access to a different tribunal to hear his state-law claims. (Doc. # 1 at ¶ 305). This is exactly the type of situation that the *Rooker-Feldman* doctrine was designed to prevent. Plaintiff does not get a Mulligan on his child custody case by bringing suit in federal court. Second, even if the court were to assume that Plaintiff is only seeking monetary damages for constitutional violations, an order from this court declaring that there were multiple constitutional violations in the state-court case would have the same effect of granting Plaintiff a do-over.

Regardless of how the argument is characterized, Plaintiff's claims are "inextricably intertwined" with the final decisions of the state court because (a) a ruling in Plaintiffs' favor would "effectively nullify" the state court judgment and (b) Plaintiff's claims "succeed[] only to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (citations omitted). Stated differently, the only way Plaintiff can achieve his desired result in this case is if this court rejects the judgment of the state court. But, such an action is far beyond the limits that are placed on this court's power

## II. *Younger*

To the extent that Plaintiff's appeal is still pending in state court, Plaintiff's claims appear barred by the *Younger* abstention doctrine. Although, as a general rule, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River Water*

11

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the *Younger* abstention doctrine is a notable exception to that rule.

The abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971) "bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Adams v. Florida*, 185 F. App'x 816, 816-17 (11th Cir. 2006) (per curiam) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)). *Younger* abstention is triggered when the federal relief would create an undue interference with state proceedings and the state proceedings at issue involve orders that uniquely further the state courts' ability to perform their judicial functions. *Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004); *see also Narciso v. Walker*, 811 F. App'x 600, 601-03 (11th Cir. 2020) (per curiam) (citing *Younger* in affirming the dismissal of a plaintiff's federal court challenge under 42 U.S.C. § 1983 to child custody proceeding pending in state court).

Here, the Drennan Defendants have represented that Plaintiff filed a Notice of Appeal in this case. (Doc. # 14 at 8, n. 3). Thus, to the extent that appeal remains active, the state court litigation is ongoing. Furthermore, the resolution of domestic relations disputes is among the highest of state interests. *Moore v. Sims*, 442 U.S. 415, 434 (1979) ("Family relations are a traditional area of state concern."). Finally, Plaintiff has not demonstrated that he would be unable to bring the same constitutional claims on appeal in state court. *See Cormier v. Green*, 141 F. App'x 808, 813-14 (11th Cir. 2005). And, none of the exceptions to *Younger* abstention appear to apply here, as there is no specific evidence of any "great and immediate" injury, there is no cited state law that would be "flagrantly and patently violative of express constitutional prohibitions," and there are no specific allegations of bad faith, harassment, or other "unusual circumstances" in

the appellate process that would justify equitable relief. *See Mitchum v. Foster*, 407 U.S. 225, 230 (1972). Thus, *Younger* abstention requires the court to abstain from this matter as it remains ongoing in the state courts.

> **D.** **Plaintiff's Complaint is barred by the domestic relations exception to federal jurisdiction**

Beyond the *Rooker-Feldman* and *Younger* abstention doctrines, the "domestic relations exception" provides an additional independent basis for this court to decline to exercise jurisdiction. Federal courts are instructed to abstain from assuming jurisdiction over cases that require a determination on issues of child custody, paternity, divorce, or alimony. *Moussignac v. Ga. Dep't of Human Res.*, 139 F. App'x 161, 162 (11th Cir. 2005) (per curiam) ("[F]ederal courts generally dismiss cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification.") (citing *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (per curiam)); *see also Alliant Tax Credit 31, Inc., v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019).

As noted, Plaintiff argues that he does not seek reversal of the state court action but rather seeks monetary damages for constitutional violations he allegedly suffered. But, as discussed above, Plaintiff's requested remedy, *at a minimum*, would require this court to declare the actions of the state court unconstitutional, which would necessitate a different result. The better reading of these allegations is that Plaintiff asks the court for access to a new tribunal to re-hash the same arguments that have already been heard and decided in state court. (Doc. # 1 at ¶ 305).

As this court pointed out in *Deaton*, while the Supreme Court has reaffirmed the domestic relations exception in cases arising under diversity jurisdiction, the Eleventh Circuit has not yet weighed in on cases arising under federal question jurisdiction. 2023 WL 6131452, at *8 (citing

*Ankenbrandt v. Richards,* 504 U.S. 689 (1992)). That being said, federal district courts within the Eleventh Circuit have repeatedly declined to exercise jurisdiction in cases where hearing the claim would mandate an inquiry into the marital or parent-child relationship. *Deaton*, 2023 WL 6131452, at *9 (citing *Ingram v. Hayes*, 866 F.2d 368 (11th Cir. 1988)); *Murphy v. Alabama*, 2020 WL 7395139, at *3 (S.D. Ala. Dec. 16, 2020) (quoting *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (per curiam), *aff'd*, 484 U.S. 174 (1988)) ("Even when a federal question is presented, federal courts decline to hear disputes [that] would deeply involve them in adjudicating domestic matters."); *see also Guevara v. Padin*, 2016 WL 7188783, at *3 (S.D. Fla. Nov. 9, 2016) ("Many courts willingly apply the domestic relations exception to federal questions and constitutional issues involving intra-family disputes and decline jurisdiction over federal questions which would deeply involve them in adjudicating domestic affairs[ ].") (quoting *Ingram*, 866 F.2d at 371 (internal quotation marks and citations omitted)).

Given that Plaintiff's requested relief necessarily requires an inquiry into the parent-child relationship, the domestic relations exception provides an independent basis for this court to abstain from exercising jurisdiction. To be clear, a state trial court issuing a final judgment does not preclude a party from challenging that ruling. However, the proper mechanism for doing so is use of the appellate process in the state courts.

  **E.**  **Defendants Day and Shellnut appear immune from suit under the doctrines of judicial and quasi-judicial immunity respectively.**

Based on the allegations made in this action, it appears clear that Defendant Day enjoys judicial immunity. *Roland v. Phillips,* 19 F.3d 552, 555 (11th Cir. 1994) (quoting *Stump v. Sparkman*, 45 U.S. 349 (1978)) ("Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the 'clear absence of all jurisdiction.'"); *Wallace v. Smith,* 145 F. App'x 300 (11th Cir. 2005) (holding that

14

a state court judge enjoyed judicial immunity when he took judicial acts within the scope of his jurisdiction); *Rushing v. Williamson*, No. 8:22-CV-2817-SDM-JSS, 2022 WL 17820389, at *1 (M.D. Fla. Dec. 20, 2022) ("A state court judge is entitled to absolute immunity from a suit in a civil rights action for an act that is within the scope of judicial authority.").

Likewise, Defendant Shellnut appears to enjoy quasi-judicial immunity as a court-appointed GAL in this case. *Jenkins v. Clerk of Ct., U.S. Dist. Ct., S. Dist. of Fla.,* 150 F. App'x 988, 990 (11th Cir. 2005) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process."); *see also Coleman v. Fla. Dep't of Child. & Fam. Servs.*, No. 14-61019-CIV, 2017 WL 11886003, at *13 (S.D. Fla. Aug. 16, 2017), r.&r. adopted sub nom. *Coleman v. Guerrero*, No. 14-61019-CIV, 2017 WL 11885998 (S.D. Fla. Sept. 28, 2017) ("Absolute immunity also protects witnesses, court appointed psychologists, and guardians ad litem who are sued in their individual capacities under § 1983."); *Hill v. Manning*, No. 1:21-CV-04549-SDG, 2022 WL 4361822, at *5 (N.D. Ga. Sept. 20, 2022) (citing *Dolin ex rel. N.D. v. West*, 22 F. Supp. 2d 1343 (M.D. Fla. 1998) ("Guardians ad litem in particular are entitled to absolute immunity from suits in their individual capacities.").

### F.     Plaintiff has failed to establish federal jurisdiction over his claims.

Finally, even if Plaintiff could overcome the other legal barriers to bringing his claims (and, to be clear, he cannot), he has failed to state a claim under federal law upon which relief can be granted. In his Complaint, Plaintiff alleges that this court has federal question jurisdiction over his claims. (Doc. # 1 at ¶ 12). Under 28 U.S.C. § 1331, federal district courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." Of his twelve counts alleged against multiple Defendants, Plaintiff only raises two federal statutes: 42

U.S.C. § 1983 (for alleged violations of his first, fourth, ninth, and fourteenth amendment rights) and 18 U.S.C. § 242. (Doc. # 1 at p. 73).

As a threshold matter, 18 U.S.C. § 242 is a criminal statute punishable by a fine or "imprison[ment] not more than one year, or both." Private litigants are not granted a civil cause of action under this statute. Therefore, taken alone, 18 U.S.C. § 242 cannot form the basis for federal jurisdiction. *Rockefeller v. U.S. Ct. of Appeals Off., for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (precluding Plaintiff from bringing claims under 18 U.S.C. § 242 for alleged constitutional violations because federal criminal statutes do not convey a private cause of action).

Furthermore, Plaintiff's claims under 42 U.S.C. § 1983 can only survive to the extent that the Defendants were acting under color of state law. *Johnson v. Regions Mortg.*, 503 F. App'x 810, 811 (11th Cir. 2013). To prevail in a § 1983 claim, Plaintiff must prove (1) that Defendant(s) deprived him of a right secured by the Constitution or federal law and (2) that the deprivation was committed under color of state law. *Walker v. Williams*, No. 21-10597, 2022 WL 363809 (11th Cir. Feb. 8, 2022) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77).

Here, Plaintiff alleges that all Defendants violated his rights under § 1983. As discussed above, Defendants Day and Shellnut appear immune from suit pursuant to the doctrines of judicial and quasi-judicial immunity. This is particularly true in the context of a § 1983 case. *See Roland*, 19 F.3d at 555; *Coleman*, No. 14-61019-CIV, 2017 WL 11886003, at *13.

The question then becomes whether the Drennan Defendants, who are private lawyers in a domestic relations case, were acting under color of state law. "'A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state,' or when 'the manner of his conduct ... makes clear that he was asserting the authority granted him and not

16

acting in the role of a private person.'" *Myers v. Bowman*, 713 F.3d 1319, 1329-30 (11th Cir. 2013) (internal citations omitted) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) and *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001)).

As private lawyers representing Plaintiff's ex-wife in a state court dispute, the Drennan defendants are not employees of the state. The court must then determine whether their conduct makes clear that they were acting with the authority of the state. *Id.* For a private person to be considered a state actor for the purposes of § 1983, one of the following three conditions must be met:

> "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test")."

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing *NBC, Inc. v. Communications Workers of America,* 860 F.2d 1022, 1026–27 (11th Cir.1988)).

There are no facts to suggest that the state has coerced anyone into committing constitutional violations. Likewise, the Drennan Defendants did not perform a public function. The Supreme Court has held that lawyers do not become state actors merely through ordinary representation of their clients in a case or controversy. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981). While Plaintiff alleges that the Drennan Defendants conspired with Defendants Day and Shellnut to deprive him of his constitutional rights (Doc. # 1 at ¶ 237), he has utterly failed to adequately plead any factual basis for such a claim. Therefore, Plaintiff has failed to allege that the Drennan Defendants were engaged in anything more than mere private conduct, which is not actionable under § 1983. As such, Plaintiff cannot sustain his claims under § 1983.

## IV. Conclusion

For all of the reasons listed above, Defendants' Motions to Dismiss are due to be granted. A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this October 31, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE